ORIGINAL



FILED

07/16/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 24-0289

IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 24-0289

ANNETTE M. TRUJILLO,

Petitioner,

v.

MONTANA TWENTIETH JUDICIAL DISTRICT
COURT, LAKE COUNTY, HON. MOLLY
OWEN, PRESIDING,

Respondent.

FILED

JUL 16 2024

Bowen Greenwood
Clerk of Supreme Court
State of Montana

ORDER

Petitioner Annette Trujillo seeks a writ of supervisory control to reverse the April 8, 2024 Amended Order of the Twentieth Judicial District Court in Lake County Cause No. DV-19-36. The order granted Trujillo's motion to compel discovery in limited part and otherwise denied it.

Following a 2017 vehicle collision in which Trujillo suffered serious injuries after being ejected from the driver's seat, she sued Toyota Motor Sales, U.S.A., Inc. ("TMS"), the seller and U.S. distributor of the vehicle she was driving, alleging that the design of the seat and occupant protection system were dangerously defective and caused injuries that a safer alternative design would have prevented. The vehicle was designed and manufactured in Japan by Toyota Motor Corporation ("TMC").[1] The Amended Order directed TMS to produce personal injury lawsuits and claims known to TMS, alleging that the driver of a 1998-2003MY U.S.-bound Toyota Sienna was injured in a crash involving a rear impact to the Sienna due to alleged defects in the Sienna's driver's seat or seat belt. It further directed TMS to produce personal injury lawsuits and claims known to TMS, alleging that the driver of any other 1998-2003MY U.S.-bound Toyota vehicle that used

---

[1] Trujillo's complaint did not name TMC as a defendant.

similar driver's seat assembly or driver's seatbelt assembly as the 2001MY Sienna in this case, was injured in a crash involving a rear impact to the vehicle due to alleged defects in such vehicle's driver's seat or seat belt. The court otherwise denied Trujillo's Motion to Compel. The Amended Order further determined that TMS does not have a legal right of control over TMC's documents. The court noted that counsel for TMS had requested certain engineering documents applicable to the defect allegations in this case from TMC, "which will be produced to [Trujillo] when received."

Trujillo asserts that the limitations in the District Court's order constitute clear error because information about other similar incidents (to which she refers as OSI) is "the single most important category of information in a defective product case – particularly in defective design litigation." She claims that a writ of supervisory control is appropriate to remedy the gross injustice wrought by the District Court's order and to prevent extended and needless litigation. At our invitation, TMS filed a response. By leave of Court, the Montana Chamber of Commerce, U.S. Chamber of Commerce, and Product Liability Advisory Council filed a joint amicus brief.

In the course of discovery in this case, Trujillo served a Request for Production on TMS, requesting that it produce

> all customer complaints, lawsuits, and claims for the [sic] any Toyota vehicle produced, all model years, that include a claim that the seatback failed *so long as the seat design is the same fundamental design as in the driver's position of the 2001 Sienna or substantially similar in the design.*

TMS responded in pertinent part that the request was vague, overbroad, unduly burdensome, and exceeded the scope of permissible discovery. Trujillo made additional requests to learn if other Toyota drivers or passengers were injured because of alleged defective seat or belt buckle design similar to that used in the Sienna. TMS repeated similar objections. When the parties could not resolve their dispute, Trujillo moved to compel, and TMS moved for a protective order. At a November 2023 hearing on the motions, the District Court adopted TMS's proposed protective order and directed counsel to prepare a written order capturing the court's oral rulings. Both parties submitted proposed orders. The court entered an order

directing TMS to "fully and fairly answer and respond to Plaintiff's First and Second Sets of Discovery Requests." TMS moved for reconsideration, claiming that the District Court's order did not properly reflect its comments from the bench, and the court should have limited OSI discovery to injured rear-ended drivers of 1998-2003MY U.S.-bound Toyota vehicles and to the information voluntarily provided by TMC. After Trujillo filed her objection, the court entered the amended order now challenged.

Trujillo points out that this Court has granted writs of supervisory control in product liability cases to ensure plaintiffs can discover relevant evidence crucial to their defective design claims. (Citing *Kuiper v. Dist. Ct. of Eighth Jud. Dist. of State of Mont.*, 193 Mont. 452, 467, 632 P.2d 694, 702 (1981); *Preston v. Mont. Eighteenth Jud. Dist. Ct.*, 282 Mont. 200, 210-11, 936 P.2d 814, 820 (1997).) She emphasizes this Court's decision in *Preston* to reverse the trial court's restrictions on discovery of other similar incidents because letting the ruling stand would unfairly disadvantage Preston and "require Preston to endure the time and expense of trial and an appeal before obtaining discoverable material essential to his case." *Preston*, 282 Mont. at 211, 936 P.2d at 820-21. Because a product liability plaintiff must prove that the product was sold in a "defective condition that is unreasonably dangerous to a user," § 27-1-719(2), MCA, Trujillo maintains, evidence of injuries caused by similar models is not just relevant, but crucial to both the "defect" and the "danger." (Citing *Preston*, 282 Mont. at 209, 936 P.2d at 819.)

Trujillo adds that, because she has asserted a claim for punitive damages, evidence of the number of similar incidents caused by the alleged defect—before the manufacture of the Sienna she was driving—is relevant to demonstrate the manufacturer's knowledge of the "high probability of injury." Finally, whether TMS had control of the documents requested should have been a moot question, Trujillo contends, because of its counsel's judicial admission at the hearing that "Plaintiff's counsel and their experts will get what they need because we have already made that ask." Whether OSI evidence is discoverable or admissible, Trujillo argues, is for the court to decide and not for TMS to determine unilaterally. Trujillo urges the Court to grant her petition and vacate the District Court's

3

Amended Order with instruction to direct TMS to "fully and fairly answer and respond to Plaintiff's First and Second Sets of Discovery Requests," as originally ordered.

TMS responds that the trial court properly rejected Trujillo's argument that TMS has control of TMC's documents for purposes of M. R. Civ. P. 34(a)(1), observing during the hearing, "The parent can get from the subsidiary; it doesn't work in the reverse." TMS adds that, as it advised the District Court, it had requested and obtained TMC's consent to provide key technical documents, including relevant design drawings and test reports for the entire Sienna series that included the Plaintiff's vehicle (1998-2003 model years), provided an appropriate protective order was entered. TMS further agreed to provide information regarding incidents involving Toyota Sienna vehicles produced in the 1998 to 2003 model years, because those vehicles used the same seat back and seatbelt buckle. TMS also represented that no other models used the same seat back or seatbelt as the subject Sienna. TMS contends that Trujillo's discovery request for models with "substantially similar" design to the seat backs or seatbelt buckles used in the pertinent Toyota Sienna vehicles is qualitatively different from the *Preston* plaintiff's request for product models using "the same" design and requires factual analysis and judgment about comparative component design. It argues that whether the District Court's order on "other incidents" properly captures the relevant vehicles raises factual issues not appropriate for supervisory control. As discovery progresses, if Trujillo develops a factual basis for contending that additional vehicle models use substantially similar design, she may ask the District Court to modify the discovery order.

The Amici emphasize the separate corporate identities of TMS and TMC, the latter being a foreign multi-national company, arguing that Trujillo's approach would create a pathway to foreign third-party discovery that circumvents available procedures and would create issues of enforceability in this and other litigation. It urges the Court not to hold that a subsidiary may be compelled to produce a foreign parent's documents.

Supervisory control is an extraordinary remedy that is sometimes justified when urgency or emergency factors exist making the normal appeal process inadequate, when the

4

case involves purely legal questions, and when the other court is proceeding under a mistake of law and is causing a gross injustice, constitutional issues of state-wide importance are involved, or, in a criminal case, the other court has granted or denied a motion to substitute a judge. M. R. App. P. 14(3). We determine on a case-by-case basis whether supervisory control is appropriate. *Stokes v. Mont. Thirteenth Jud. Dist. Ct.*, 2011 MT 182, ¶ 5, 361 Mont. 279, 259 P.3d 754 (citations omitted). It is the Court's general practice to refrain from exercising supervisory control when the petitioner has an adequate remedy of appeal. *E.g.*, *Westphal v. Mont. Eleventh Jud. Dist. Ct.*, No. OP 21-0387, 405 Mont. 538, 495 P.3d 421 (Aug. 17, 2021) (citing cases). As we recently reaffirmed, pretrial discovery disputes typically are not appropriate for exercise of supervisory control. *Accident Fund Gen. Ins. Co. v. Mont. Eighth Jud. Dist. Ct.*, No. OP 24-0302, Order at 7 (Mont. June 4, 2024) (citing *USAA Cas. Inc. Co. v. Eighth Jud. Dist. Ct.*, No. OP 19-0139, 396 Mont. 547, 449 P.3d 793 (Apr. 23, 2019)). A district court has "inherent discretionary power to control discovery based on its authority to control trial administration." *Henricksen v. State*, 2004 MT 20, ¶ 35, 319 Mont. 307, 84 P.3d 38 (citing *Anderson v. Werner Enters., Inc.*, 1998 MT 333, ¶ 13, 292 Mont. 284, 972 P.2d 806).

Having reviewed the petition, the response, and the materials submitted, we conclude that Trujillo has not met the requirements for invoking the exercise of supervisory control at this time. She is correct that in a products liability case, where the plaintiff must prove the product was sold in a "defective condition unreasonably dangerous to a user," "evidence of injuries caused by similar models is relevant to both the 'defect' and the 'danger.'" *Preston*, 282 Mont. at 209, 936 P.2d at 819 (quoting § 27-1-719(2), MCA). We held in *Preston* that the district court improperly limited discovery to injuries caused *only* by the specific model of nailer that caused the plaintiff's injuries, "thereby excluding injuries caused by similar nailers with the *same* trigger mechanism." *Preston*, 282 Mont. at 207, 936 P.2d at 818 (emphasis added). We explained that "evidence of other injuries caused by similar products is relevant and *admissible*" in a products liability action. *Preston*, 282 Mont. at 207, 936 P.2d at 818 (emphasis in original) (citations omitted). Here, however, TMS advised the

5

District Court that what it had agreed to provide was information "to include the entire model series for which this unique driver's seat and seatbelt was used." At this juncture, we cannot conclude that the District Court was proceeding under a mistake of law when it amended its discovery order in accordance with TMS's request. Factual determinations about other potentially relevant and as-yet unidentified vehicle models and the extent to which TMS has "possession, custody, or control" of such information as required by M. R. Civ. P. 34(a)(1) do not raise purely legal issues appropriate for this Court's review without a developed record.

IT IS THEREFORE ORDERED that the petition for writ of supervisory control is DENIED and DISMISSED.

The Clerk is directed to provide notice of this Order to all counsel of record in Lake County District Court Cause No. DV-19-36, and to the Hon. Molly Owen, presiding District Judge.

DATED this 16 day of July, 2024.

_____
Chief Justice

_____

_____

_____

_____
Justices

6